IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>KALUP ALLEN BORN,<br><br>    Defendant. | Case No. 21-CR-174-JFH |

**OPINION AND ORDER**

  Before the Court are three filings by Defendant Kalup Allen Born ("Defendant"): a notice of intent to introduce character evidence at trial [Dkt. No. 42]; an omnibus motion in limine [Dkt. No. 43]; and a motion to admit hearsay statements [Dkt. No. 44]. The Government objects to each. Dkt. No. 45; Dkt. No. 46; Dkt. No. 47. The Court held a hearing on May 12, 2022 regarding the filings.

**BACKGROUND**

  Defendant is charged with the murder of Billy Jo Johnson ("Johnson"). Dkt. No. 2. At the time of the charged conduct, both Defendant and Johnson were housed in the "E-Pod" unit of the Pontotoc County Jail in Ada, Oklahoma. Dkt. No. 43 at 2. Inmates in the E-Pod each received recreation time. *Id.* On the day of the charged conduct, Johnson had recreation time before Defendant. *Id.* A surveillance video of Johnson shows him repeatedly pacing around the E-Pod, entering and exiting the shower numerous times, walking toward what appears to be a door or a communication area, and repeatedly securing and removing the towel he wore around his waist. Dkt. No. 43-1. Almost an hour into the video, Defendant exits his cell while Johnson is still walking around. Defendant approaches Johnson and punches him, beginning a physical

1

altercation. *Id.* After approximately a minute, Defendant returns to his cell, and shortly thereafter, medical personnel arrive to assist Johnson. *Id.* The video does not have sound. *Id.*

Detention Officer Victoria Bramlett ("Officer Bramlett") wrote a statement after the charged conduct, which read in part:

> I took 3 towells [sic] back to E-pod . . . I then walked back up to Booking to meet EMS [and] escorted them back to E-pod. EMS loaded inmate onto gurney [and] was escorted back to sally port to the ambulance. I went back into E-pod later [and] Inmate Born laughed [and] thought it was funny. Saying somethings [sic] like he got what he deserved, he was always running his mouth [and] flooding the pod. Inmate Born also said what[']s the worse they can do charge him w/ Assault [and] Battery, maybe Aggravated. I told him he hoped.

Dkt. No. 44-1 at 3.

Almost a month after the charged conduct, Oklahoma State Bureau of Investigation Agent Josh Dean ("Agent Dean") attempted to interview Defendant. Dkt. No. 43-1. Agent Dean asks Defendant if he wants to talk to him, to which Defendant says "nah, not really." *Id.* Agent Dean states that Defendant will be charged with murder, which Defendant acknowledges, and wishes Defendant luck. As Defendant leaves, he purportedly yells something like "savage gang" or "sav boys." The recording is unclear, mostly due to an echo.

## AUTHORITY AND ANALYSIS

### I. Evidence Defendant Seeks to Include

#### A. Victim Character Evidence

Defendant seeks to introduce evidence that during his time in Pontotoc County Jail, Johnson "engaged in an escalating pattern of hostile, destructive, and antagonistic behavior," "regularly disregarded jail rules, destroyed jail property, and feigned a need for medical and mental health care and attention," and "frequently sought out conflict with other inmates by hurling provocative insults and making sexually inappropriate remarks." Dkt. No. 42 at 2. Defendant

2

asserts that testimony about Johnson's "reputation as an antagonistic and hostile troublemaker" is admissible under Federal Rule of Evidence 404. *Id.* at 3.[1]

Rule 404(a)(2) permits a defendant to introduce testimony of "an alleged victim's pertinent trait," with the requirement that if such evidence is admitted, the prosecution may offer evidence to rebut it, offer evidence of the defendant's same trait, and, in a homicide case, offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor. Fed. R. Evid. 404(a)(2)(B)-(C). Rule 405 allows evidence of a character trait to be introduced through testimony about the person's reputation or testimony about the witness's opinion of the person. Fed. R. Evid. 405(a). The rule prohibits evidence of relevant specific instances of a person's conduct unless the person's "character or character trait is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). In other words, evidence of specific instances is limited to "cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry." Fed. R. Evid. 405 advisory committee note. "When character is used circumstantially and hence occupies a lesser status in the case, proof may be only by reputation and opinion." *Id.*

Tenth Circuit law is clear that evidence of an assault or homicide victim's aggression is not an essential element of a charge, claim or defense, but is instead a circumstantial use of character. *United States v. Talamante*, 981 F.2d 1153, 1155-56 (10th Cir. 1992); *Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir. 1986) ("Evidence of a violent disposition to prove that the person was the aggressor in an affray is given as an example of the circumstantial use of character evidence in

---

[1] While it is unclear from Defendant's original notice whether he desires to introduce testimony about specific instances of Johnson's conduct under Rule 405, *see generally* Dkt. No. 42, he clarifies in his reply that he does not seek to present evidence of specific instances of conduct, *see* Dkt. No. 49.

the advisory committee notes for [Rule] 404(a).")  Thus, evidence of an assault or homicide victim's violent character may be introduced through reputation or opinion testimony, but not through testimony describing specific instances of the victim's past conduct. *Talamante*, 981 F.2d at 1156.

Defendant enumerates several alleged character traits he wishes to introduce, such as that Johnson was hostile, threatening, destructive, erratic, and generally a frustrating and difficult pod-mate.  The Court does not believe annoying, erratic, or generally frustrating character traits are pertinent or relevant to the murder charge brought against Defendant.  Being annoying and being aggressive are not equivalent.  Rule 404(a) and its advisory committee notes are narrowly tailored: evidence of a victim being first aggressor, or "evidence of a violent disposition to prove that [a] person was the aggressor in an affray," can be admissible, but such a "circumstantial use of character evidence raises questions of relevancy as well as questions of allowable methods of proof." Fed. R. Evid. 404(a).  Defendant may present evidence of Johnson's aggression, but not of his annoyingness, at trial.  Before embarking on this line of questioning, Defendant shall notify Court and counsel outside the presence of the jury to demonstrate the planned examination is sufficiently narrowly tailored.[2]

---

[2] The Government acknowledges that evidence of a homicide victim's trait of aggression may be introduced through reputation or opinion testimony. Dkt. No. 46 at 2-3. However, it claims that "it is not enough that the victim had a reputation for hostile, antagonistic, and abusive behavior . . . [but that] Defendant should have to testify of his personal knowledge of those traits and that he killed the victim upon adequate provocation." *Id.* at 3.  In support, the Government cites *United States v. Bautista*, 145 F.3d 1140 (10th Cir. 1998), a case where the Tenth Circuit affirmed exclusion of testimony about specific homosexual advances made by the victim to other individuals.  The appellate court agreed with the trial court in noting that there were other ways for the defendant to advance the same theory, including that he "had the opportunity to testify that he feared [the victim's] aggressive homosexual advances" and killed him in the heat of passion. *Id.* at 1152.  The Court does not believe *Bautista* controls here, particularly as it addressed specific instance testimony rather than reputation or opinion testimony.  The Government provides no other authority limiting introduction of reputation or opinion testimony to instances where a defendant

**B. Defendant's Post-Incident Statement**

Defendant also seeks to introduce a statement he made to a detention officer "shortly after the assault, asking rhetorically about the worst possible charges he could face and suggesting 'Assault & Battery' or 'Aggravated' (*i.e.*, aggravated assault) as possibilities." Dkt. No. 44 at 2.

As a general rule, "exculpatory post-arrest statements, made by and offered by a defendant, are excluded under the hearsay rule." *United States v. Garcia*, Case No. CR-20-321-F, 2022 WL 198700, at *1 (W.D. Okla. Jan. 21, 2022) (collecting cases). Defendant claims two hearsay exceptions apply: statement of a then-existing state of mind under Rule 803(3) and statement against penal interest under Rule 804(b)(3). Dkt. No. 44 at 3. The Court will examine each.

Rule 803 allows statements of a "then-existing state of mind (such as motive, intent, or plan)" regardless of whether the declarant is available as a witness. Fed. R. Evid. 803(3). This is so because "[s]tatements relating to a person's state of mind have probative value mainly because the declarant has no chance to reflect upon and perhaps misrepresent his situation." *United States v. Rodriguez-Pando*, 841 F.2d 1014, 1019 (10th Cir. 1988).

Defendant argues that his statement to Officer Bramlett was made "shortly after the assault," demonstrates his intent and state of mind, and "potentially negate[s] the requisite mental state" for premeditated murder. Dkt. No. 44 at 3. The Government claims the state-of-mind exception does not apply because "a period of time elapsed between the [D]efendant's attack on the victim and the [D]efendant's statement to the detention officer," where "Defendant had chances to reflect upon the attack and perhaps misrepresent the situation." Dkt. No. 47 at 2.

---

waives his or her Fifth Amendment privilege against self-incrimination. Because neither *Perrin* nor *Talamante* impose such a requirement, the Court declines to do so.

5

Officer Bramlett's written report says that she did several things between the time of the charged conduct and the unspecified "later" time when she returned to E-Pod and heard Defendant make the remarks in question. *See* Dkt. No. 44-1. The Court agrees with the Government that enough time elapsed between the charged conduct and Defendant's statement that Defendant had the chance to reflect upon and perhaps misrepresent his situation. The statement to Officer Bramlett is not admissible under Rule 803(3).

Rule 804 allows statements given by a declarant that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's . . . interest . . . [as] to expose the declarant to civil or criminal liability" and "is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability" only when the declarant is unavailable under the Federal Rules of Evidence. Fed. R. Evid. 804(b)(3). A declarant is unavailable for current purposes if the declarant "is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies." *Id.* at (a)(1). Defendant asserts that his statement was against his penal interest because he "admitted to a criminal assault" and that he would be unavailable as a witness if he chooses not to testify. Dkt. No. 44 at 4.

It is unclear whether Defendant qualifies as an unavailable witness.[3] Even if he were, however, the statement is not clearly inculpatory enough to fall within Rule 804. The exception

---

[3] The Government claims Defendant is not unavailable as a witness because he "will create his own [un]availability." Dkt. No. 47 at 3-4. It cites the end of Rule 804(a), which states that hearsay statements otherwise falling under Rule 804 may not be offered "if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying." *Id.* In 2004, the Tenth Circuit in dicta cited two other circuits which held that a defendant who invokes the Fifth Amendment is not unavailable under Rule 804(a). *Garcia-Martinez v. City & Cty. of Denver*, 392 F.3d 1187, 1193 (10th Cir. 2004)

applies only to statements that are "*so contrary* to the declarant's . . . interest" that a reasonable person would only say it if it were true. Fed. R. Evid. 804(b)(3)(A) (emphasis added). "Courts accordingly consider the statement in context and the circumstances under which it was made." *United States v. Lozado*, 776 F.3d 1119, 1125 (10th Cir. 2015). The rule is limited to "only those declarations or remarks . . . that are individually self-inculpatory" and "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *United States v. Smalls*, 605 F.3d 765, 781 (10th Cir. 2010) (quotations omitted).

Defendant's question is not self-inculpatory. Contrary to his argument, he does not admit to assaulting Johnson. He only asks—rhetorically, by his own admission—whether he could be charged with assault. Inquiring about potential charges he could face is not equivalent to admitting that he performed the charged conduct. Factoring in the context and circumstances of the statement, as the Court must under *Lozado*, further demonstrates that the statement was not inculpatory. As the Government notes, Defendant was already facing murder, burglary, kidnapping, and arson charges at the time of the charged conduct.[4] The Court agrees that this background "likely indicates why the Defendant didn't think these subsequent charges would be something to be concerned about." Dkt. No. 47 at 3. Defendant's statement to Officer Bramlett is not admissible under Rule 804.

---

(citing *United States v. Peterson*, 100 F.3d 7, 13-14 (2d Cir. 1996); *United States v. Kimball*, 15 F.3d 54, 55-56 (5th Cir. 1994)). However, there has not been a clearer statement from the circuit of whether a defendant's invocation of the Fifth Amendment is a "wrongful" cause of unavailability.

[4] In fact, these charges are still pending against Defendant, and the case is set before the undersigned. *See* E.D. Okla. Case No. 21-CR-122-JFH.

## II.  Evidence Defendant Seeks to Exclude

Defendant asks the Court to exclude several types of evidence in his omnibus motion in limine.  Dkt. No. 43.  "The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Management Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008) *aff'd,* 402 Fed.App'x 337 (10th Cir. 2010) (quotation and citation omitted).  In many instances, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context.  *Id.*  A court will generally not grant a motion *in limine* unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible on *all* potential grounds."  *Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc.*, No. 17-CV-644, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019) (citation and quotation omitted).

Initially the Court notes that Defendant's motion in limine fails to comply with Local Rule 12.1(B), which requires the first page of every motion contain a statement as to whether the opposing party objects.  LCrR 12.1(B).  The Court could summarily deny the motion on this ground.  *See id.*  Because the Government has already responded, however, the Court continues to consideration of the merits.

### A. Gang Affiliation

Defendant requests the Court exclude evidence that, as he left a law enforcement interview conducted approximately a month after the charged conduct, he proclaimed his affiliation with the Savage Boys prison gang by shouting "savage gang" and "sav boys."  Dkt. No. 43 at 5.  He claims (in italics) that "nothing suggests [his] encounter with Johnson was gang-related" and asserts that

8

admission would be improper under Rule 404(b) and Rule 403.  *Id.*  The Government responds that Defendant's references to gang affiliation are admissible intrinsic evidence because Johnson "would regularly say things that disrespected gangs and gang members" and his antagonism is necessary background inextricably intertwined with the charged conduct.  Dkt. No. 45 at 1-3.

At the May 12, 2022, hearing, the Government conceded that Defendant's gang affiliation would only be relevant if it presents strong evidence that Defendant was aware of Johnson's gang-related antagonism.  At this time, the Government stated it does not have any such evidence in its possession.  Therefore, Defendant's motion in limine is granted in this regard.  Should the Government locate evidence that would provide a link regarding motive between Defendant's gang affiliation and Johnson's gang antagonism, it shall promptly file a Rule 404(b) notice describing the evidence in detail.

### B. Autopsy Photos

As the Court noted previously, Defendant's motion in limine fails to comply with local rules requiring conferral before filing of motions.  This is evident in Defendant's discussion of autopsy photos.  Dkt. No. 43 at 7-8.  He claims the photos "depict Johnson's internal organs and body cavity," are gruesome, and are likely to elicit an emotional response.  *Id.*  He also claims there is "de minimis value" and a risk of cumulative evidence in introducing the photos, as "the parties do not dispute that [Defendant] killed Johnson."  *Id.* at 8.  The Government responds that it "does not intend to offer pictures [of] any of the internal examination by the Medical Examiner."  Dkt. No. 45 at 3.  However, the Government does intend to "offer a few photographs pertaining to the injuries depicted on the victim's face and head," which it claims "are probative to show the jury the necessary state of mind for premeditation and malice aforethought" when presented alongside video footage of the charged conduct.  *Id.* at 3, 6.  The Government also asserts the

photos are not cumulative because they "depict the body from different angles than [the] crime scene pictures and thereby give the jury a more complete understanding of the injuries." *Id.* at 6.

"The admission of photos in a homicide case is a matter within the sound discretion of the trial court." *United States v. Soundingsides*, 820 F.2d 1232, 1242-43 (10th Cir. 1987) (quoting *United States v. Cline*, 570 F.2d 731, 734 (8th Cir. 1978)). "[G]ruesomeness alone does not make [autopsy] photographs inadmissible." *United States v. Naranjo*, 710 F.2d 1465, 1468 (10th Cir. 1983). Rather, a "district judge must balance the prejudicial effect of the photographs against their probative value, an exercise of discretion that is rarely disturbed." *United States v. Pettigrew*, 468 F.3d 626, 638 (10th Cir. 2006) (quoting *United States v. Treas-Wilson*, 3 F.3d 1406, 1410 (10th Cir. 1993)). Here, given the Government's statement that presentation of autopsy photos will be limited to photos depicting Johnson's injuries and will not include visuals of the internal examination, the Court does not believe the risk of prejudice outweighs the probative value of related to the nature of Johnson's injuries, the cause of his death, and the question of malice aforethought. *See Soundingsides*, 820 F.2d at 1243. It therefore denies Defendant's motion in limine to exclude all autopsy photos as premature. Defendant has not demonstrated that *all* autopsy photos are "clearly inadmissible on *all* potential grounds." *Tulsa Zoo*, 2019 WL 1562147 at *1. Defendant may, of course, lodge objections to specific photographs at trial.[5]

### C. Deodorant Cap

Finally, Defendant asks the Court to exclude evidence that Defendant had placed a deodorant cap in his jail cell door so that "he could pop his door open." Dkt. No. 43 at 8 (quotation omitted). Again, Defendant's failure to confer with the Government before filing his motion is

---

[5] Counsel are directed to confer to determine whether or not any objections remain regarding autopsy photos. To the extent that any such objections remain, the parties are directed to notify the Court of such specific objections and provide a copy of the subject photos.

apparent. The Government represents in its response that it does not plan to offer evidence of the deodorant cap, and that if its plans change, it will notify Defendant and the Court. Dkt. No. 45 at 6-7. Because the Government does not plan to introduce this evidence, Defendant's motion to exclude it is denied as moot.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Government's objection to Defendant's notice of intent to introduce victim's character evidence at trial [Dkt. No. 46] is **overruled in part**. Reputation or opinion evidence of Billy Jo Johnson's character trait of aggression is admissible. Evidence of other character traits which may be irritating but are not violent is not admissible.

**IT IS FURTHER ORDERED** that Defendant's motion to admit hearsay statements [Dkt. No. 44] is **denied.**

**IT IS FURTHER ORDERED** that Defendant's omnibus motion in limine [Dkt. No. 43] is **denied in part and granted in part.**

DATED this 17th day of May 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE